**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEREK BROWN,                          :
                                      :    Civil Action No. 05-2531 (JLL)
            Petitioner,               :
                                      :
        v.                            :    **OPINION**
                                      :
ALFARO ORTIZ, et al.,                 :
                                      :
            Respondents.              :


**APPEARANCES:**

        DEREK BROWN, Petitioner <u>Pro</u> <u>Se</u>
        # 287039/952357B
        East Jersey State Prison
        Lock Bag "R"
        Rahway, New Jersey 07065

        SUSAN B. GYSS, ESQ., Assistant Prosecutor
        Hudson County Prosecutor's Office
        595 Newark Avenue
        Jersey City, New Jersey 07306
        Counsel for Respondents

**LINARES**, District Judge

        This matter is before the Court on Petitioner Derek Brown's

petition for habeas corpus relief under 28 U.S.C. § 2254.  For

reasons discussed below, the petition for habeas corpus relief

will be denied for lack of merit.

I.   BACKGROUND

A.   Statement of Facts

    The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its March 23, 1999 per curiam Opinion on petitioner's direct appeal from his conviction:

> Rashid Muhammed was robbed and murdered in an apartment he shared with his business partner and friend, Charles Henry Williams, on April 8, 1994. Defendant Derek Brown conceded that he was present while the crimes were being perpetrated by his cousin, co-defendant Henry R. Short, but claimed that he was uninvolved.
>
> Given the narrow focus of this appeal, a limited summary of the facts will serve. Williams, after working the 2:30 p.m. to 11:30 p.m. shift at his other job with the Federal Express in Manhattan, and after then spending an hour or so visiting with a friend, returned to the apartment he shared with Muhammed in Jersey City at about 1:30 a.m. on the morning of April 9. Muhammed's backpack was on the front steps, but the apartment was completely dark. When Williams opened the door, he noticed that items were scattered on the floor and sensed that something was wrong. He walked to the nearest pay telephone and called the police. The police arrived about an hour later and entered the apartment while Williams waited outside.
>
> The police saw bloodstains, loose wires, and plastic bags on the living room floor. They followed bloodstains leading into the backyard and ultimately found the victim's body on top of a glass atrium in an adjoining yard. When the body was removed from the atrium, a five-inch long knife blade fell from the victim's back. There were seventeen stab wounds clustered on the left side of the victim's back, five cutting wounds on his torso, and a cut on his neck. An electrical cord was tied twice around his neck. He had contusions to the right side of his face and lower jaw.

Blood saturated his clothing and trailed down the slope of the atrium.

A further search of Muhammed's apartment revealed blood stains in the living room and kitchen. Two kitchen drawers were open, one containing knives. Books, papers, and other items were on the floor in the entrance hallway. Muhammed's electronic-pager case lay on the floor. The pager was missing. The police brought Williams into the apartment, and after looking around, he told the police that someone had rummaged through Muhammed's belongings and that also missing were a piece of music equipment called a digital sampler, video games, and some compact disks. A pair of blood-stained pants, worn by Short during the murder, were also found in the apartment.

The police were able to duplicate and monitor the victim's pager, which soon led them to the home of Odessa Cannon, the mother of defendant's nieces. She told police, and later testified at trial, that Short and Brown came to her apartment before May 1, 1994, and Brown told her that he was selling a camera, a pager, and a walkman. Brown sold the camera to her and the pager to her boyfriend.

Defendant Brown was arrested and provided two tape recorded statements to the police, one on May 2 and the other on May 3, 1994. In both, he admitted his presence during the killing but denied taking part in it. In many other respects, the statements were in conflict.

For example, in the first statement, he said that about a month and a half before the killing, he had met the victim and agreed to purchase from him a digital sampler. On the evening of April 8, he and Short took a train from Queens to meet the victim in Jersey City. He said the victim was driving a black Acura, although the evidence showed that the victim sold this vehicle at least a month prior. They drove to the victim's apartment to conclude the sale. In the second statement, defendant said that he never spoke to the victim before the night of the murder; that he and Short walked to the victim's apartment and appeared there without telling the victim they were coming; and that Short's purpose was to collect some money that the victim owed him.

In both statements, defendant claimed that after returning from using a bathroom, he observed the victim and Short fighting. But in the first statement, he said he saw Short stab the victim three or four times in his side and wrestle

3

him to the floor.  The defendant then said, "let's go man,
leave that kid alone, let's let's let's go."  In the second
statement, defendant said that Short cut the victim's neck
before the defendant said "let's go."  In the first
statement, defendant said Short then "grabbed the guy's
beeper, the . . . camera and a walkman."  Then, defendant
left the apartment, carrying the digital sampler, and Short
came out about ten minutes later.  In the second statement,
defendant said that Short brought out the digital sampler.
These and other contradictions certainly suggested that
Brown was being less than candid in the recorded statements.
We note that Brown admitted selling the pager and camera, as
described by Odessa Cannon, and he further admitted keeping
the proceeds of the sales

(Ra56-59).[1]

---

[1]  Respondents provided the state court record with their
answer to the petition.  Aside from the transcripts of the
proceedings, which are noted in fn. 2 of this Opinion, the
relevant record is designated as follows:

| | |
|---|---|
| Ra1-2 | Indictment #1385-10-94 |
| Ra3-4 | Judgement of Conviction |
| Ra5-6 | Notice of Appeal |
| Ra7a-7ff | Defense brief in support of appeal |
| Ra8-54 | State's brief in opposition |
| Ra55-70 | Appellate Division per curiam Opinion filed March 23, 1999. |
| Ra71 | Petition for Certification |
| Ra72-75 | Judgment of Conviction on resentencing |
| Ra76-77 | Notice of Appeal on resentencing |
| Ra78 | Appellate Division Order modifying sentence to run concurrently, filed December 20, 2000 |
| Ra79-85 | Petition for post-conviction relief ("PCR") |
| Ra86-122 | Pro se brief in support of PCR petition |
| Ra123-162 | Petitioner's brief by counsel in support of PCR |
| Ra163-171 | State's brief in opposition to the PCR |
| Ra172-178 | February 14, 2003 Letter Opinion and Order denying the PCR petition |
| Ra179-181 | Notice of appeal from denial of PCR |
| Ra182-244 | Petitioner's brief by counsel on appeal from denial of PCR |
| Ra245-283 | State's brief in opposition |
| Ra284-287 | Appellate Division per curiam Opinion filed November 1, 2004 |
| Ra288-297 | Petition for Certification |

B.    Procedural History

Petitioner, Derek Brown ("Brown"), was indicted by a Hudson County Grand Jury in October 1994, along with co-defendant Henry R. Short, on charges of murder, felony murder, armed robbery, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon.  (Ra1-2).

A jury trial with the Honorable Frances L. Antonin, J.S.C., presiding took place in October 1996.  The jury returned a verdict of guilty as to all charges on October 24, 1996.[2]  Brown

---

Ra298-299 State's Opposition brief
Ra300       New Jersey Supreme Court denied certification on March 16, 2005.


[2]  Transcripts of the state court proceedings were provided by the State and are designated as follows:

    1T    - Transcript of pretrial proceedings on July 12, 1995
    2T    - Transcript of pretrial proceedings on July 13, 1995
    3T    - Transcript of pretrial proceedings on July 14, 1995
    4T    - Trial transcript dated October 1, 1996
    5T    - Trial transcript dated October 2, 1996
    6T    - Trial transcript dated October 3, 1996
    7T    - Trial transcript dated October 4, 1996
    8T    - Trial transcript dated October 7, 1996
    9T    - Trial transcript dated October 8, 1996
    10T   - Trial transcript dated October 9, 1996
    11T   - Trial transcript dated October 10, 1996
    12T   - Trial transcript dated October 15, 1996
    13T   - Trial transcript dated October 16, 1996
    14T   - Trial transcript dated October 17, 1996
    15T   - Trial transcript dated October 21, 1996
    16T   - Trial transcript dated October 22, 1996
    17T   - Trial transcript dated October 23, 1996
    18T   - Trial transcript dated October 24, 1996
    19T   - Transcript of sentencing on December 20, 1996
    12T   - Transcript of PCR proceedings on January 30, 2003.

5

was sentenced on December 20, 1996, to a term of life in prison with a 30-year parole disqualifier on the murder count, and a consecutive term of twenty years in prison with a 10-year parole disqualifier on the armed robbery count.  The court merged the felony murder count into the murder count, and the weapon possession counts into the armed robbery count for purposes of sentencing.  (Ra3-4).

Brown filed a direct appeal, and the Appellate Division affirmed the conviction in an Opinion filed on March 23, 1999. However, the case was remanded for resentencing because the Appellate Division found that there was insufficient support for a finding of aggravating factor six and the trial court did not give a proper analysis to justify a consecutive sentence, pursuant to State v. Yarbough, 100 N.J. 627 (1985).  (Ra55-70). The New Jersey Supreme Court denied certification on June 8, 1999.  (Ra71).

On remand, the trial court imposed the same sentence, and Brown appealed from the sentence only.  The Appellate Division assumed jurisdiction, pursuant to N.J.Ct.R. 2:10-3, and in an Order filed on December 20, 2000, the court amended the sentence to conform with their opinion regarding the excessive nature of the sentence; namely, the sentence was made to run concurrently and not consecutively as originally imposed by the trial court.

6

The matter was again remanded for the trial court to amend the judgment of conviction accordingly.  (Ra78).

Thereafter, on or before November 26, 2001, Brown filed a petition with state court for post-conviction relief ("PCR"). (Ra79-85).  A evidentiary hearing was conducted on January 30, 2003, and the court issued a letter Opinion and Order, dated February 14, 2003, denying the PCR petition.  (Ra172-178).  Brown promptly filed an appeal from the trial court's decision. (Ra179-181).  On November 1, 2004, in a <u>per curiam</u> opinion, the Appellate Division affirmed the denial of post-conviction relief. (Ra284-287).  The New Jersey Supreme Court denied certification on March 16, 2005.  (Ra300).

Brown filed this federal habeas petition on May 16, 2005. On August 25, 2005, the respondents filed a motion to dismiss the petition on the affirmative defense that the petition is time-barred under 28 U.S.C. § 2244(d)(1).  Petitioner filed a traverse or opposition to the motion on or about September 6, 2005.  In an Opinion and Order filed on March 14, 2006, this Court denied the State's motion to dismiss, finding that the petition was timely filed.  The State was directed to file an answer responsive to the claims asserted in the habeas petition, together with the relevant state court record.  The State filed an answer with the pertinent state court record, on April 24, 2006.  The Court now considers the merits of the petition.

7

II.  <u>STATEMENT OF CLAIMS</u>

In his habeas petition, Brown raises the following claims for habeas relief:

Ground One: Ineffective assistance of trial counsel.

Ground Two: Ineffective assistance of appellate counsel.

Ground Three:  The state appellate court's assessment of petitioner's claims is erroneous.

The State answered the petition again asserting that the petition is time-barred.  The State also contends that petitioner has not exhausted his available state court remedies, and that these unexhausted claims are now procedurally defaulted. Finally, the State argues that petitioner's claims are without merit or do not state a cognizable federal claim involving a federal constitutional violation.

III.  <u>EXHAUSTION & PROCEDURAL DEFAULT DOCTRINES</u>

A.  <u>Exhaustion Requirement</u>

The exhaustion and procedural default doctrines are often confused because they operate in tandem to protect the integrity and independence of state judicial systems.  First, pursuant to the exhaustion doctrine, a federal court shall not *grant* a writ of habeas corpus on behalf of an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the state courts."  28 U.S.C. § 2254(b)(1). In order to exhaust state court remedies, a habeas petitioner

8

must show that he "fairly presented" his claims to the state courts by "invoking one complete round of the State's established appellate review process." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)).[3]

If a habeas petitioner has not "fairly presented" his claims to the state courts and it is still possible for him to raise those claims in a state court proceeding, the claim is unexhausted. See, e.g., 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); Carpenter, 296 F.3d at 146 (stating that a habeas claim is unexhausted where petitioner has not fairly presented the claim in state court and it remains possible for him to do so). If the state law clearly forecloses review of a claim which has not been fairly presented to the state courts, a federal court entertaining a habeas petition will hear the claim despite petitioner's failure to fairly present the claim in state court, unless the claim is

---

[3]   In Carpenter, the court applied the pre-AEDPA version of § 2254 because Carpenter filed his habeas petition before AEDPA went into effect. Carpenter, 296 F.3d at 149 n.12. This does not affect the court's thorough discussion of the exhaustion and procedural default doctrines as they relate to this matter.

procedurally defaulted.  See 28 U.S.C. § 2254(b)(1)(B)(I);
Carpenter, 296 F.3d at 146.

     In this case, based on review of the state court record,
this Court finds that Brown has satisfied the exhaustion
requirement, as his habeas claims were in fact raised in his
state post-conviction proceedings.  However, even if the habeas
claims were not exhausted, this Court observes that, pursuant to
28 U.S.C. § 2254(b)(2), it has the authority to deny the habeas
petition on the merits even if petitioner failed to exhaust the
remedies available to him in state court.  28 U.S.C. § 2254(b)(2)
("An application for a writ of habeas corpus may be denied on the
merits notwithstanding the failure of the applicant to exhaust
the remedies available in the courts of the State."); see also
Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under
§ 2254(b)(2), a district court may deny non-exhausted,
non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d
Cir. 2003)(same).

B.  Procedural Default

     A procedural default occurs when a habeas petitioner's
federal claim is "barred from consideration in the state courts
by an 'independent and adequate' state procedural rule."  See,
e.g., Carpenter, 296 F.3d at 146; Doctor v. Walters, 96 F.3d 675,
683 (3d Cir. 1996).  On habeas review of state prisoner claims, a
federal court "will presume that there is no independent and

adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman v. Thompson, 501 U.S. 722, 734-35 (1991)(quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); see also Harris v. Reed, 489 U.S. 255, 266 (1989) (holding that habeas claim was not procedurally defaulted where state court did not clearly and expressly rely on procedural bar as ground for rejecting the claim).[4]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  James v. Kentucky, 466 U.S. 341, 348-351 (1984).  See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)). Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

---

[4] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

Finally, if it is determined that a claim is procedurally defaulted, a federal court may only entertain such claim on habeas review if the petitioner shows either cause to excuse the default and prejudice resulting from the default or that a fundamental miscarriage of justice will result should the federal court fail to hear petitioner's claim.  See, e.g., Coleman, 501 U.S. at 750.

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  Coleman, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  Murray at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170

12

(1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Carrier, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him."  Werts, 228 F.3d at 193 (citing Schlup v. Delo, 513 U.S. 298, 326 (1995)).

Here, the Court finds that the claims raised in Brown's state PCR proceedings are not procedurally barred, as asserted by the State.  It is clear from the state court PCR proceedings that the trial judge did not deny the PCR petition on procedural grounds.  In fact, the PCR court discussed at length the merits of Brown's ineffective assistance of counsel claims.  On appeal, the Appellate Division affirmed the PCR court's decision on the merits.  Therefore, this Court finds that the claims at issue are

13

not procedurally defaulted and the Court may adjudicate those claims on habeas review.

IV.   <u>STANDARD OF REVIEW</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).  Because petitioner is a <u>pro se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

14

of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim -

> (1)   resulted in a decision that was contrary to, or
>       involved an unreasonable application of, clearly
>       established Federal law, as determined by the
>       Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an
>       unreasonable determination of the facts in light
>       of the evidence presented in the State court
>       proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  Williams, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  Id.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of [the petitioner's] case."
Id. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  Id. at 411.  See also
Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied,
532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171
F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v.
Brennan, 528 U.S. 824 (1999).

    Consonant with Williams, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  Werts, 228 F.3d at 197.

    This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached

16

a different result.  Id.  AEDPA prohibits such de novo review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  Id.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d
Cir. 2005).

    Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538
U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237
(2000)).  With respect to claims presented to, but unadjudicated
by, the state courts, however, a federal court may exercise pre-
AEDPA independent judgment.  See Hameen v. State of Delaware, 212
F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001);
Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See
also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002)
(Moore, J., concurring) (and cases discussed therein).

    Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit
has ruled that this presumption of correctness based upon state

court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## V.   ANALYSIS

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

## A.   Ineffective Assistance of Trial Counsel

In his first claim for habeas relief, Brown complains that his trial counsel was ineffective for (1) failing to request lesser-included offenses to the murder and robbery charges; (2) failing to object to an inadequate jury instruction on accomplice liability; (3) failing to seek exclusion of a razor found on petitioner; and (4) failing to request a proper charge as to petitioner's statements.  Brown raised these claims in his PCR proceedings.

The PCR court held an evidentiary hearing on these claims. In a written opinion, the PCR court denied all claims.  Based on the testimony of trial counsel, Steven Menaker, Esq., and petitioner at the evidentiary hearing, the PCR court found:

> This court does not find petitioner, Derek Brown, credible
> at all.  For example, he testified that he did not discuss

18

lesser included offenses with Mr. Menaker at all and yet the record reflects that a strategic decision was made in that regard [16T 59:10-60:8]. The prosecutor's comments indicating that he and Mr. Menaker discussed lesser included offenses while off the record is consistent with Mr. Menaker's testimony at the hearing that he would have discussed them with his client. It is difficult to imagine that Mr. Menaker discussed them with the prosecutor off the record then went on the record to indicate that he had decided not to request lesser included offenses and all the time never discussed it at all with the petitioner. Also, the plea memorandum was filled out on February 16, 1996. A trial date of May 6, 1996 was set at that time. That memorandum was, of course, signed by Mr. Menaker, the prosecutor and the petitioner. This does not equate to petitioner's testimony at the hearing that he first signed that memorandum when he met Mr. Menaker for the very first time which happened to be at the county jail. A <u>Miranda</u> hearing took place on July 12, 1995, and on July 13, 1995. Mr. Menaker actually conducted direct examination of his client [2T 139:24]. Petitioner also testified in court, obviously with Mr. Menaker present, on July 14, 1995 [3T 2:15]. Obviously there were conversations between Mr. Menaker and petitioner prior to, during and subsequent to the <u>Miranda</u> hearing. Petitioner's testimony at the PCR hearing was thus so far reaching and clearly incorrect, that he cannot be considered credible at all. The only credible testimony given by the petitioner was his indication that had he known he would be sentenced to life imprisonment he would have accepted the plea offer. Of course, he was talking with the advantage of hindsight and that is of no relevance in this matter. It is also inconceivable that Mr. Menaker only spent a total of one half hour discussing the case with petitioner or that Mr. Menaker would on his own and without consulting his client at all have rejected the plea offer in such a manner. Such testimony simply lacks the "ring of truthfulness." It is not logical or reasonable.


Mr. Menaker on the other hand appeared to this court to be completely credible at all times. While he admitted that he could not remember certain things he testified as to what his normal procedure was and that he had no reason to deviate from it in the instant matter. Thus, the court finds that petitioner has not met his burden of proof. ...

(Ra175).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the

20

> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel,
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
Id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  Id. at 697.  See
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

Here, a review of the PCR transcript shows that the PCR
court applied the Strickland test in reviewing petitioner's
claims alleging ineffective assistance of counsel.  (Ra175-176).

21

(1) *Failure to request lesser-included offenses*

With respect to the claim about lesser included offenses, the PCR further found:

> It is well documented in the transcript that Mr. Menaker considered and discussed with the prosecutor the possibility of seeking lesser included offenses.  This tactical decision by Mr. Menaker should not be brushed aside simply because the petitioner was later convicted.  Defense counsel must be allowed wide latitude in making tactical decisions and any interference with that would distract from the overriding mission of vigorous advocacy of the defendant's cause.  Judicial scrutiny of counsel's performance must be highly deferential so as not to interfere with the constitutionally protected independence of counsel.  [Strickland v. Washington, 466 U.S. 668, 688-89 (1984)].  Since Mr. Menaker testified that his practice would have been to discuss lesser included offenses with his client, and since the petitioner bears no credibility, the petitioner has failed to meet his burden on this point as well.

(Ra176).

Thus, the PCR court found no deficient performance by trial counsel on this claim.  Specifically, the court rejected Brown's testimony as not credible, and based on evidence in the record and trial counsel's testimony, the court concluded that Menaker had discussed the issue of lesser included offenses, but declined to request same for strategic reasons.

This Court is required to apply a presumption of correctness to factual determinations made by the state court.  28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness based upon state court

factual findings can only be overcome by clear and convincing evidence.  <u>See</u> <u>Duncan</u>, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Petitioner has failed to rebut this factual finding by the state court with any evidence to the contrary.

Moreover, Brown has not shown that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Nor was the state court ruling contrary to established federal law set forth in <u>Strickland</u>.  Therefore, this claim will be denied.

> (2) *Failure to object to an inadequate jury instruction on accomplice liability.*

Next, Brown complains that his trial counsel failed to request a charge on accomplice liability.  The PCR court found:

> [P]etitioner claims that a charge should have been given regarding lesser criminal intent.  However, that charge can only be given in situations where the indictment charges or the defendant requests lesser included offenses. [<u>State v. Bielkiewicz</u>, 267 N.J. Super. 520, 528 (App. Div. 1993)].  Since there was no request for lesser included charges then an accomplice charge dealing with lesser included offenses based on the lesser criminal intent of an accomplice is irrelevant here.

(Ra176).

Again, the PCR court found no deficient performance by trial counsel with respect to this claim.  For the same reasons as set forth in the preceding subsection, this Court concludes that the

PCR court decision was not contrary to the established federal law of Strickland, and this claim likewise will be denied.

(3) *Failure to seek exclusion of the razor*

Brown also alleges that his trial counsel should have moved to exclude from evidence at trial the razor found on petitioner upon his arrest.  The state PCR court noted that the trial record "amply show[ed] that Mr. Menaker objected to [admission of the razor] and the court overruled his objection." (Ra176). Moreover, the court stated:

> It is highly speculative for the petitioner to contend that the motion be made prior to trial that the resulting decision by the court would have been different.  Since Mr. Menaker did indeed argue strenuously against the introduction of the razor and since a cautionary charge was given to the jury not to infer any wrongdoing other than as the razor related to the instant crime, this court finds that the petitioner has failed to meet his burden here as well.

(Ra176).

To establish ineffective assistance of counsel based on a failure to file a motion, Brown must be able to show that the pretrial motion to exclude the razor at trial would have succeeded.  Counsel's failure to file motions does not per se constitute ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would

have been granted or sustained had it been made.  <u>United States</u>
<u>v. Oakley</u>, 827 F.2d 1023, 1025 (5th Cir. 1987).  Thus, "[c]ounsel
cannot be faulted for failing to pursue meritless or futile
objections."  <u>Johnston v. Love</u>, 940 F. Supp. 738, 776 (E.D. Pa.
1996), <u>aff'd</u> 118 F.3d 1576 (3d Cir.), <u>cert</u>. <u>denied</u>, 522 U.S. 972
(1997); <u>see also</u> <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th
Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 1022 (1994)(failure to raise non-
meritorious issues does not constitute ineffective assistance of
counsel).

     Here, petitioner cannot show that such a motion would have
been successful if made.  Indeed, trial counsel did object to the
admissibility of the razor during the trial, and the trial court
denied the request.[5]  Therefore, because the state court found

---

     [5] Generally, matters of state law and rules of procedure
and evidence are not reviewable in a federal habeas petition.
The Supreme Court has stated that "it is not the province of a
federal habeas court to reexamine state-court determinations on
state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68
(1991).  Federal courts must afford the states deference in its
determinations regarding evidence and procedure.  <u>See</u> <u>Crane v.</u>
<u>Kentucky</u>, 476 U.S. 683, 690 (1986).  It is well-established that
"a state court's misapplication of its own law does not generally
raise a constitutional claim.  The federal courts have no
supervisory authority over state judicial proceedings and may
intervene only to correct wrongs of constitutional dimension."
<u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997)(citations
omitted), <u>cert</u>. <u>denied</u>, 522 U.S. 1109 (1998).

     However, evidentiary rulings may violate due process when
the petitioner "was denied fundamental fairness at trial."
<u>Hutchins v. Hundley</u>, 1991 WL 167036 at *4 (D.N.J. Aug. 22,
1991)(Wolin, J.)(citations omitted); <u>see</u> <u>also</u> <u>Kontakis v. Beyer</u>,
19 F.3d 110, 120 (3d Cir. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 881
(1994); <u>Lisenba v. California</u>, 314 U.S. 219, 228, 236

that such a motion would not have succeeded, this habeas claim is meritless.  Thus, there is no showing of deficient performance.  Brown also cannot satisfy the prejudice prong under Strickland.  Although the trial court allowed the razor to be admitted into evidence at trial, the court gave cautionary instructions to the jury regarding the use of such evidence.  Accordingly, this claim will be denied for lack of merit.

   4.  *Failure to request a Hampton[6] charge*

   Brown next argues that his trial counsel was ineffective in failing to request a Hampton charge with respect to petitioner's

---

(1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").  See also United States v. Agurs, 427 U.S. 97, 108 (1976)(For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial).

   In this case, the Court finds that the state court's evidentiary ruling did not violate petitioner's right to due process.  The razor was relevant, thus the issue was a question of the weight to be accorded the evidence, not its admissibility.  The trial court gave a proper cautionary instruction to the jury in this regard.  Thus, under the state court rules of evidence, the razor was properly admitted.  There is nothing to show that this evidential ruling constituted an error of constitutional dimension.  Also, this Court's review of the trial record provided demonstrates that the trial process was fundamentally fair.

   [6]  State v. Hampton, 61 N.J. 250 (1972).  In Hampton, the Supreme Court of New Jersey held that, when a defendant's statement to police in a custodial setting is admitted at trial, the jury shall not be informed of the court's finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible.

two statements given to the police.  At the evidentiary hearing,
Menaker testified that there was no question that Brown had given
the two statements to the police and that they were properly
transcribed.  Trial counsel also stated that these statements
were a substitute for Brown's testimony at trial, and that the
statements effectively presented a defense to the charged
offenses eliminating the need for Brown to take the witness stand
and be subject to cross-examination.

    The PCR court ruled as follows:

> Therefore, it was not in petitioner's interest to have the
> credibility of his statements in which he both times denied
> involvement in the homicide challenged.  There were
> inconsistencies in the two statements regarding other
> issues.  A <u>Hampton</u> charge appears to be required pursuant to
> <u>N.J.R.E.</u> 104(c) and this court notes the Appellate
> Division's concern over the absence of that charge, even in
> situations where it was not requested.  <u>State v. Jordan</u>, 285
> N.J. Super. 589, 594 (1995).  The problem may lie in the
> fact that defense counsel (when it does not want a <u>Hampton</u>
> charge for valid reasons) is failing to place on the record
> its studied decision not to request such a charge.  There
> are many situations, including the instant one in which the
> defendant can get his defense to the jury, in the form of
> evidence, by way of his "statement" without assuming the
> risks inherent in taking the witness stand.  The State
> needed those statements to prove petitioner's presence at
> the scene at the time of the homicide, but the price the
> State paid was that the petitioner's defense went before the
> jury as evidence as well.  Since Mr. Menaker testified that
> these two statements were a testimonial substitute, it
> cannot be said that he faltered in failing to request a
> <u>Hampton</u> charge.  Once again, the better practice would have
> been to place all this on the record at the time.

(Ra177).  The Appellate Division affirmed the PCR court's
ruling on appeal without discussion.  (Ra284-287).

This Court finds that the PCR record clearly establishes that defense counsel's decision in not requesting a <u>Hampton</u> charge was strategic, so as to get Brown's defense before the jury without risking trial testimony that could be undermined on cross-examination.  Moreover, because there were several inconsistencies between the statements on minor issues, but not as to petitioner's claim that he was not involved in the murder, it was not in Brown's interest to have a <u>Hampton</u> charge read to the jury.  Such a charge would have emphasized for the jury that they could evaluate the credibility of Brown's statements, which most likely would have been to Brown's detriment.

Therefore, this Court concludes that trial counsel's performance was not deficient in failing to request a <u>Hampton</u> charge.  Further, even if this Court were to assume arguendo that the trial counsel's failure to request a <u>Hampton</u> charge constituted deficient performance, this habeas claim still fails because Brown cannot prove the prejudice prong under <u>Strickland</u>. There is no showing that this error by trial counsel was so serious as to deprive Brown of a fair trial or that a different outcome would have resulted at trial otherwise.  There was overwhelming evidence of Brown's guilt, as well as Brown's own admission that he was present during the murder, although he claims not to have been involved in it, and that he participated in the robbery.

Thus, Brown has not shown that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Nor was the state PCR court ruling contrary to established federal law set forth in <u>Strickland</u>.  Therefore, this final claim of ineffectiveness of trial counsel will be denied.

B.   <u>Ineffectiveness of Appellate Counsel</u>

Brown also argues that his appellate counsel was constitutionally deficient in his representation of petitioner on direct appeal.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the <u>Strickland</u> standard.  <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004); <u>Wright v. Vaughn</u>, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

29

Moreover, in order to prevail on a claim that appellate
counsel was ineffective, a petitioner must show not only that
counsel's performance fell below an objective standard of
reasonableness, but also that there was a reasonable probability,
but for counsel's deficiency in raising the arguments on appeal,
that the conviction would have been reversed on appeal.  See
Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert.
dismissed, 527 U.S. 1050 (1999).

Here, Brown raised this claim in his state PCR proceedings,
and the PCR court rejected all ineffectiveness of trial and
appellate counsel claims as without merit.  (Ra172-178).  On
appeal from the PCR court's decision, the Appellate Division
affirmed without discussion.  (Ra284-287).  Based on review of
the record, this Court finds that petitioner fails to establish
ineffective assistance of appellate counsel because he cannot
show that a different outcome would have resulted on appeal if
counsel had raised the arguments now presented on federal habeas
review on direct appeal.  These claims were presented for state
court review in petitioner's state PCR proceedings and found to
be totally lacking in merit.  Accordingly, Brown can not
establish the prejudice prong under Strickland with respect to
these claims.

Furthermore, Brown's claims alleging ineffective assistance
of trial counsel are not typically raised on direct appeal

30

because it requires the appellate court to look beyond the bounds of the record and the evidence presented at trial.  Therefore, this Court cannot conclude that the determination of the ineffective assistance of appellate counsel claim by the state courts resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact and this claim will be denied accordingly.

C.   The State Appellate Court's Ruling was Erroneous

Brown's final claim for habeas relief simply alleges that the Appellate Division erroneously determined that petitioner's claims were without merit, and that the Supreme Court of New Jersey declined to review the Appellate Division's erroneous decision.  It is not clear whether Brown is referring to the Appellate Division's decision on direct appeal or on state PCR review.

In either event, however, this general claim fails because Brown does not assert any violation of a federal constitutional right.  Rather, it would appear that Brown is asking this Court to review the state court decisions for error, which is not a cognizable federal habeas claim for relief.  A federal district court has no supervisory or appellate authority over state judicial proceedings, and may intervene only to correct errors of constitutional magnitude.  See Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997).  Thus, a federal district court is

31

limited to determining on habeas review whether the state court conviction violated federal statutory or constitutional law, or treaties of the United States.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).

Because Brown has not demonstrated any federal constitutional deprivation or violation of U.S. law and the Constitution with respect to his state court criminal proceedings, this last claim for habeas relief will be dismissed for failure to state a cognizable claim of constitutional dimension.

### IV.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**<u>CONCLUSION</u>**

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


/s/ Jose L. Linares

Dated: October 31, 2006    Jose L. Linares
               United States District Judge